FILED
United States Court of Appeals
Tenth Circuit

October 9, 2020

Christopher M. Wolpert
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENHCIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DANIEL AARON KOCH,

Defendant - Appellant.

No. 19-8034

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. NO. 1:18-CR-00167-ABJ-1)**

Dean Sanderford, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant-Appellant.

Timothy J. Forwood, Assistant United States Attorney (Mark A. Klaassen, United States Attorney, with him on the brief), District of Wyoming, Cheyenne, Wyoming, for Plaintiff-Appellee.

Before **HARTZ**, **MURPHY**, and **MATHESON**, Circuit Judges.

**MURPHY**, Circuit Judge.

# I. INTRODUCTION

Daniel Koch pleaded guilty to receipt of child pornography. *See* 18 U.S.C. § 2252A(a)(2)(A). The district court sentenced Koch to a twenty-year term of incarceration, to be followed by a ten-year term of supervised release. Without objection, the district court ordered Koch to comply with the following special condition of supervised release (the "Sexual Material Prohibition"):

> [Koch] shall not possess, send or receive any pornographic, sexually oriented, or sexually stimulating visual, auditory, telephonic or electronic signs, signals or sounds from any source, unless part of a treatment regimen. Defendant shall not visit bulletin boards, chat rooms or other Internet sites where any pornographic, sexually oriented or sexually stimulating images or messages are discussed. He shall not send or receive e-mail or other documents discussing any pornographic, sexually oriented, or sexually stimulating images or messages.

For the first time on appeal, Koch asserts the district court erred in imposing upon him the Sexual Material Prohibition without first making particularized findings justified by compelling circumstances and based on an individual assessment of his case.[1] This obligation arises, Koch argues, because

---

[1] To be clear, Koch's challenge on appeal is narrowly directed to the procedures employed by the district court before imposing the condition. Koch does not challenge, and this court does not address, any substantive aspects of the condition. Nevertheless, in analyzing the issue raised by Koch on appeal, this court cannot ignore the exceedingly broad nature of the Sexual Material Prohibition. To state just one relevant example, the Sexual Material Prohibition on the possession of "pornographic, sexually oriented, or sexually stimulating auditory . . . signs, signals or sounds" appears to be so broad on its face so as to bar Koch from even non-pornographic materials like, for instance, an audio book

(continued...)

the condition interferes with his fundamental First Amendment right to access legal, sexually oriented materials. *See United States v. Burns*, 775 F.3d 1221, 1223 (10th Cir. 2014) (holding that although district courts typically have "broad discretion to impose conditions on supervised release," when "the court imposes a special condition that invades a fundamental right or liberty interest, the court must justify the condition with compelling circumstances"); *United States v. Martinez-Torres*, 795 F.3d 1233, 1238 (10th Cir. 2015) (holding, in the context of reviewing a special condition of supervised release, that the First Amendment generally protects even the substantially broader "right to possess sexually explicit material involving adults").

---

[1](...continued)
version of Gustave Flaubert's *Madame Bovary*. *Cf. United States v. Brune*, 767 F.3d 1009, 1018 (10th Cir. 2014) ("An imprecise law that criminalizes access to Nabokov's *Lolita* or Woody Allen's *Manhattan* will not survive constitutional scrutiny even if it also bans access to actual hardcore images of underage victims."); *cf. also United States v. Wise*, 391 F.3d 1027, 1034 (9th Cir. 2004) (noting potential breadth of the terms "sexually oriented" and "sexually stimulating"). Accordingly, in analyzing whether the district court plainly erred in imposing the Sexual Material Prohibition without first making the requisite particularized findings, this court declines the government's implied request to view the Sexual Material Prohibition as applying only to pornography. In so doing, this court is well aware that "where a broad condition of supervised release is ambiguous and could be read as restricting a significant liberty interest, we construe the condition narrowly so as to avoid affecting that significant liberty interest." *United States v. Bear*, 769 F.3d 1221, 1230 (10th Cir. 2014). Here, however, the Sexual Material Prohibition restricts "pornographic, sexually oriented, or sexually stimulating" material, so a narrow reading of the condition as a restriction on pornography alone is simply not possible.

Upon review of the relevant Tenth Circuit authorities, we conclude the district court plainly erred in imposing the Sexual Material Prohibition without first making the necessary case-specific findings. Accordingly, exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **vacates** the condition and **remands** the matter to the district court for further proceedings consistent with this opinion.

## II. BACKGROUND

An indictment charged Koch with, inter alia, receipt of child pornography. *See* 18 U.S.C. § 2252A(a)(2)(A). Pursuant to a plea agreement, Koch pleaded guilty to the charge. In advance of sentencing, a United States Probation Officer prepared a Presentence Investigation Report ("PSR"). Among other things, the PSR increased Koch's offense level by five levels because Koch engaged in "a pattern of activity involving the sexual abuse or exploitation of a minor." *See* U.S.S.G. § 2G2.2(b)(5); *id.* § 2G2.2 cmt. n.1 ("'*Pattern of activity involving the sexual abuse or exploitation of a minor*' means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct."). In support of the application of § 2G2.2(b)(5), the PSR noted Koch's 2004 Indiana state felony conviction for "Child Molesting" and an ongoing investigation in Campbell County, Wyoming, for sexual abuse of a

-4-

minor. The PSR also included disturbing background summaries of the facts underlying the activities used to support the applicability of § 2G2.2(b)(5). Koch filed a response to the PSR, which objected to proposed restitution figures and offered minor biographical corrections. Koch did not, however, object to the applicability of § 2G2.2(b)(5) or to the PSR's summaries of the factual bases of the two instances of child sex abuse underlying the applicability of § 2G2.2(b)(5).

At the sentencing hearing, the district court reviewed Koch's personal and criminal history in light of the factors set forth in 18 U.S.C. § 3553(a). The district court repeatedly noted Koch's prior conviction for child molestation and the then-current investigation into his sexual abuse of a fifteen-year-old girl. The district court deemed this history "very, very concerning" and noted the difficulty of ascertaining "what leads an individual . . . into this kind of abuse." Finally, the district court recognized that society does not "know at this point how a person can ever be rehabilitated from these charges from this conduct." Although the district court noted there exist "sex offense classes and so forth," it did not "have any good statistics as to how effective they are."

The district court then sentenced Koch to twenty years in prison and ten years of supervised release. Prior to delineating the applicable conditions of supervised release, the court stated that "due to the nature of [the] offense of conviction, conditions are recommended to address [Koch's] risk of sexually deviant behavior." Among those conditions, the district court imposed the Sexual

Material Prohibition.  Koch did not object to any of the terms of his supervised release or the court's stated justification for those conditions.

## III.  ANALYSIS

### A.  Standard of Review

Koch failed to object at sentencing to the district court's failure to support its imposition of the Sexual Material Prohibition with particularized findings that amount to a compelling justification.  Accordingly, this court reviews the issue for plain error.  *United States v. Malone*, 937 F.3d 1325, 1327 (10th Cir. 2019).  Under this standard, we will "reverse only if there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (quotation omitted).

### B.  Discussion

#### 1.  Error

The district court erred in failing to justify the imposition of the Sexual Material Prohibition with compelling circumstances particularized to Koch's case.

The Supreme Court has made clear that the First Amendment protects the right of individuals to possess sexually explicit materials involving adults, let alone non-explicit sexually oriented materials.  *See United States v. Williams*, 553 U.S. 285, 288 (2008) ("[T]o protect explicit material that has social value, we have limited the scope of the obscenity exception, and have overturned convictions for the distribution of sexually graphic but nonobscene material.");

-6-

*Martinez-Torres*, 795 F.3d at 1238 (citing *Williams* for the proposition that special conditions of supervised release like those at issue here "implicate[] constitutional interests, such as the right to possess sexually explicit materials involving adults"). This right, like the other rights enshrined in the First Amendment is fundamental. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 336 n.1 (1995) ("The right of free speech, the right to teach and the right to assembly are, of course, fundamental rights." (quotation omitted)); *Meyer v. Grant*, 486 U.S. 414, 420 (1988) ("The freedom of speech and of the press, which are secured by the First Amendment against abridgment by the United States, are among the fundamental personal rights and liberties which are secured to all persons by the Fourteenth Amendment against abridgment by a State." (quotation and alteration omitted)); *Doe v. City of Albuquerque*, 667 F.3d 1111, 1128 (10th Cir. 2012) ("[T]he First Amendment includes a fundamental right to receive information."); *United States v. Voelker*, 489 F.3d 139, 150-51 (3d Cir. 2007) (holding that a restriction significantly narrower than the one at issue here (i.e., a ban on possession of "textual descriptions or visual descriptions of 'sexually explicit conduct,' as defined by 18 U.S.C. § 2256(2)") implicates "serious First Amendment concerns").

This court's precedents create something of a hierarchy as to the extent of justification required when a district court imposes conditions of supervised release. A district court is not required to undertake an individualized assessment

-7-

of whether it is appropriate to impose upon a defendant a mandatory condition of supervised release. *Martinez-Torres*, 795 F.3d at 1237. "When, however, neither the Sentencing Commission nor Congress has required or recommended a condition, we expect the sentencing court to provide a reasoned basis for applying the condition to the specific defendant before the court." *Id.* That is, before a district court can impose upon a defendant a special condition of supervised release, the district court must analyze and generally explain how, with regard to the specific defendant being sentenced, the special condition furthers the three statutory requirements set out in 18 U.S.C. § 3583(d). *Id.* at 1236.[2] Although this court is "not hypertechnical in requiring the court to explain why it imposed a special condition of release—a statement of generalized reasons suffices—the explanation must be sufficient for this court to conduct a proper review.

---

[2]In *Martinez-Torres*, this court explained that to satisfy the statutory standard set out in § 3583(d), a special condition of supervised release

> must (1) be "reasonably related" to the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, or the defendant's educational, vocational, medical, or other correctional needs; (2) "involve[] no greater deprivation of liberty than is reasonably necessary" for the purposes of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation; and (3) be consistent with any pertinent policy statements issued by the Sentencing Commission.

795 F.3d at 1236 (quoting § 3583(d)).

Particularly where the condition of release implicates constitutional interests, such as the right to possess sexually oriented materials involving adults, more detail may be required if the reasons for the restriction are not matters of common knowledge." *Id.* at 1238 (quotation and citations omitted). Finally, "when a court imposes a special condition that invades a fundamental right or liberty interest, the court must justify the condition with compelling circumstances." *Burns*, 775 F.3d at 1223; *see also Malone*, 937 F.3d at 1327 (citing *Burns* for this proposition).

The question then becomes whether the district court complied with these dictates when it imposed upon Koch the Sexual Material Prohibition. The answer to that question is a clear "no." In imposing the Sexual Material Prohibition, the district court merely noted the following: (1) the extent of Koch's criminal history (i.e., sexual contact with thirteen-year-old and fifteen-year-old girls and possession of child pornography); (2) a personal doubt offenders like Koch were amenable to rehabilitation; and (3) a desire to address Koch's "cognitive thinking errors." This district court did not, however, analyze or explain how restricting Koch's access to sexually oriented (but non-pornographic) materials, specifically including such materials only involving adults, would aid in Koch's rehabilitation or protect the public. The district court did not, for instance, find that accessing sexual material involving adults impaired Koch's rehabilitation because it rendered him unable to undertake the tasks associated with daily life, *see United*

*States v. Miller*, 665 F.3d 114, 136 (5th Cir. 2011), or acted as some kind of sexualizing gateway leading to the consumption of child pornography. The district court did not, likewise, analyze whether something inherent in the nature of Koch's crime, like the age of his victims, made it impracticable to differentiate between children and adults in sexually oriented materials. *See Voelker*, 489 F.3d at 152. Nor did the district court consider any of the other potentially numerous valid reasons for restricting Koch's access to constitutionally protected materials. Absent such analyses on the part of the district court, it is simply impossible for Koch to contest, or for this court to resolve as a substantive matter, whether a prohibition like the Sexual Material Prohibition satisfies the statutory imperatives set out in § 3583(a), let alone the requirement that any such special condition, given that it implicates a fundamental right, serves a compelling governmental interest. It is for this very reason that this court's case law mandates that the district court engage in an on-the-record analysis of the propriety of all special conditions of supervised release and a particularly meaningful and rigorous analysis when the special condition implicates a fundamental right or interest. Because the district court failed in its obligation to undertake that analysis, its imposition of the Sexual Material Prohibition on Koch amounted to error.

## 2. Plainness

In light of the current state of this court's precedents, the district court's error is plain. That is, it is now patently clear in the Tenth Circuit that before a district court can impose a special condition implicating a fundamental right, including a condition like the Sexual Material Prohibition, the district court must set forth, on the record, defendant-specific findings that show a compelling interest.

An error is plain if it is "clear or obvious at the time of the appeal." *United States v. Salas*, 889 F.3d 681, 686-87 (10th Cir. 2018) (quotation omitted); *see also Henderson v. United States*, 568 U.S. 266, 276 (2013) (holding that the plainness of an error is measured against the law "in effect at the time [the appellate court] renders its decision" (quotation omitted)). To be obvious, an error must be "contrary to well-settled law." *Salas*, 889 F.3d at 687 (quotation omitted). "In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue. The absence of such precedent will not, however, prevent a finding of plain error if the district court's interpretation was clearly erroneous." *Id.* (quotations omitted). "In the absence of Supreme Court or circuit precedent directly addressing a particular issue, a circuit split on that issue weighs against a finding of plain error. But disagreement among the circuits will not prevent a finding of plain error if the

-11-

law is well settled in the Tenth Circuit itself." *Id.* (quotation and citation omitted).

The plainness requirement is "easily satisfied" where, as here, the district court failed to make particularized findings to support a condition that intrudes on a fundamental right or liberty interest. *See United States v. Dunn*, 777 F.3d 1171, 1178 (10th Cir. 2015) (holding that general rule requiring supportive findings before imposing special conditions of supervised release made plain the district court's error in failing to make such findings in support of an occupation restriction, even though this court had not previously applied the general rule in the context of occupation restrictions). As this court recently made clear in *Malone*, our precedents in this area "unambiguously require" the following two actions on the part of sentencing courts: (1) a sentencing court must make "supporting findings" when it "imposes a special condition of supervised release"; and (2) a sentencing court "must justify the condition with compelling circumstances" when it "imposes a special condition that invades a fundamental right or liberty interest." 937 F.3d at 1327 (quotations omitted). Consistent with this dictate, this court has in at least three separate cases over the last several years, vacated special conditions that touch on constitutional rights for lack of adequately supportive findings. *Id.* at 1327-29; *Dunn*, 777 F.3d at 1178-79; *Burns*, 775 F.3d at 1223-25. That none of these three cases involved a condition like the Sexual Material Prohibition is of no moment given that in *Martinez-Torres* this court concluded that a justification virtually identical to the one

offered here was insufficient to support a far more limited restriction on adult

pornography.  795 F.3d at 1238 ("Particularly where the condition of release

implicates constitutional interests, such as the right to possess sexually explicit

materials involving adults, *see United States v. Williams*, 553 U.S. 285, 288

(2008), more detail may be required if the reasons for the restriction are not

matters of common knowledge.  *See Burns*, 775 F.3d at 1222 (The condition of

supervised release 'intrudes on [the defendant's] constitutional right to familial

association.  Because of this intrusion on a constitutional right, the district court

should have made particularized findings before restricting [the defendant's]

contact with his daughter.'")); *see also Doe*, 667 F.3d at 1128 (recognizing a

fundamental First Amendment right to receive information).[3]  Thus, the district

---

[3]In this regard it is worth noting the Supreme Court's more than fifty-year-old decision in *Stanley v. Georgia*, 394 U.S. 557 (1969).  *Stanley* noted that the right to receive information was at its zenith in a person's home, so that the government could not, consistent with the First Amendment, prohibit possession of even obscene material.  *Id.* at 564-68  As *Stanley* noted,

> It is now well established that the Constitution protects the right to receive information and ideas. . . .  This right to receive information and ideas, regardless of their social worth, is fundamental to our free society.  Moreover, in the context of this case—a prosecution for mere possession of printed or filmed matter in the privacy of a person's own home—that right takes on an added dimension.  For also fundamental is the right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy.

> The makers of our Constitution undertook to secure conditions

(continued...)

-13-

favorable to the pursuit of happiness.  They recognized the significance of man's spiritual nature, of his feelings and of his intellect.  They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things.  They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations.  They conferred, as against the government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized man.

These are the rights that appellant is asserting in the case before us.  He is asserting the right to read or observe what he pleases—the right to satisfy his intellectual and emotional needs in the privacy of his own home.  He is asserting the right to be free from state inquiry into the contents of his library.  Georgia contends that appellant does not have these rights, that there are certain types of materials that the individual may not read or even possess. Georgia justifies this assertion by arguing that the films in the present case are obscene.  But we think that mere categorization of these films as "obscene" is insufficient justification for such a drastic invasion of personal liberties guaranteed by the First and Fourteenth Amendments.  Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home.  If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch.  Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.

*Id.* at 565-66 (citations, quotations, and alteration omitted).  As emphasized repeatedly above, the Sexual Material Prohibition applies even to materials that do not amount to pornography, let alone obscenity.  *See supra* n.1.  Given all these considerations, this court has no doubt the Sexual Material Prohibition implicates Koch's fundamental First Amendment rights.  To be clear, however, although *Stanley* and *Martinez-Torres* hint at the answer, it is unnecessary for this court to resolve whether a more limited special condition, for instance one directed specifically at pornography, plainly implicates fundamental First Amendment interests.  Instead, it is enough for this court to conclude it is plain

(continued...)

-14-

court's error in failing to make the requisite findings in support of the Sexual Material Prohibition imposed on Koch is obvious under extant Tenth Circuit precedent. *Dunn*, 777 F.3d at 1178.

In arguing against this result, the government relies on this court's decisions in *United States v. Mike*, 632 F.3d 686 (10th Cir. 2011), and *United States v. Barela*, 797 F.3d 1186 (10th Cir. 2015). Neither of these cases, however, support the conclusion that the error at issue here is not plain. The government's reliance on *Mike* is somewhat perplexing. In *Martinez-Torres*, the government similarly relied on *Mike* in arguing that district courts are under no obligation to make particularized findings in support of special conditions restricting a supervised releasee's access to adult pornography. 795 F.3d at 1242. *Martinez-Torres* rejected the argument that *Mike* was controlling, noting *Mike*'s holding was limited to the proposition that the error at issue there, assuming it amounted to error, was not plain. *Id.* In *Martinez-Torres*, on the other hand, the issue was preserved for review and the court was obligated to decide whether the failure to make the requisite findings amounted to error. *Id.* It is certainly true that in this case, like in *Mike*, the court is reviewing Koch's claim of error under the plain error standard. The difference, however, and it is a significant one, is that in the interim between the decision in *Mike* and the resolution of this appeal

---

[3](...continued)
that the Sexual Material Prohibition implicates such interests.

-15-

this court has resolved the legal question by requiring district courts to support

special conditions of supervised release implicating fundamental rights with

particularized and compelling justifications.  *Martinez-Torres*, 795 F.3d at 1241;

*Malone*, 937 F.3d at 1327-29; *Dunn*, 777 F.3d at 1178-79; *Burns*, 775 F.3d at

1223-25.  And, as the Supreme Court has made clear, the plainness of an error is

measured against the law "in effect at the time [the appellate court] renders its

decision."  *Henderson*, 568 U.S. at 276 (quotation omitted).

*Barela*, a case issued a few weeks after the decision in *Martinez-Torres*, is

equally unhelpful to the government.  *Barela* involved a different appellate claim

than the one at issue here.  The claim in *Barela* was not a procedural challenge to

the district court's failure to adequately justify a special condition that prohibited

the defendant from "viewing or possessing any material depicting and/or

describing sexually explicit conduct or pornography."  797 F.3d at 1193

(quotation and alteration omitted).[4]  Instead, it was a substantive claim that the

condition at issue in that case could not be imposed even using the correct

procedures because it was "not related to the relevant sentencing factors."  *Id.*

This court held that Barela could not establish that the condition violated his

---

[4]*United States v. Barela* further noted that the term "sexually explicit conduct" is clearly defined in federal law.  797 F.3d 1186, 1193 n.3 (10th Cir. 2015) ("'Sexually explicit conduct' is defined as 'actual or simulated' sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or 'lascivious exhibition of the genitals or pubic area of any person.'  18 U.S.C. § 2256(2)(A).").

substantive First Amendment rights because of Barela's particular circumstances and because some courts had approved similar prohibitions against First Amendment challenges. *Id.* at 1194. In contrast, the precedents identified above make clear the proposition that a district court is required to make particularized findings before prohibiting the possession of sexual materials that fall within the ambit of the First Amendment. Koch does not assert that the First Amendment categorically prohibits the district court from imposing on him, no matter the circumstances, a limitation on his ability to access sexually oriented materials. Instead, he asserts that absent particularized findings on the part of the district court it is impossible to decide whether the imposition of the Sexual Material Prohibition is consistent with the First Amendment. Because the law in this circuit now makes patently clear that such findings are necessary, the district court's error in failing to make such findings is plain.

### 3. Substantial Rights

Because there is a reasonable probability the district court would not have imposed the Sexual Material Prohibition if it had complied with the procedural requirements plainly set out in this court's precedents, Koch has demonstrated that the district court's error affected his substantial rights.

"An error affects substantial rights if there is a reasonable probability that the error affected the outcome of the proceedings." *Burns*, 775 F.3d at 1224. An error in failing to make necessary findings affects a defendant's substantial rights

-17-

if there is a reasonable probability the district court would not have imposed the special condition if it had undertaken the required analysis. *Id.*; *United States v. Francis*, 891 F.3d 888, 898 (10th Cir. 2018). "Under plain error review, we may vacate special conditions of supervised release only if the record reveals no basis for the conditions. This is because if the record reveals a basis, there is no reasonable probability that but for the error the defendant's sentence would be different and thus the proceeding's fairness was not impacted." *Francis*, 891 F.3d at 898 (quotations, alterations, and citation omitted).

Koch asserts the district court's failure to make the requisite findings before imposing the Sexual Material Prohibition affects his substantial rights because there is no basis in the record to conclude that possessing legal, sexually oriented adult material is "reasonably related" to his history or the characteristics of his offense. *See supra* n.2 (setting out the statutory requirements and limitations on special conditions of supervised release). The government, on the other hand, argues the Sexual Material Prohibition satisfies the statutory limitations because (1) Koch's current conviction is for possession of child pornography; (2) Koch's criminal history shows a prior child molestation that led to imprisonment and an abusive sexual relationship with a fifteen-year-old girl that was under investigation by state authorities at the time of sentencing; and (3) the district court expressed doubt about whether Koch was amenable to rehabilitation. Given this background history, the government asserts there is a

basis in the record supporting the Sexual Material Prohibition and no reasonable probability the district court would have chosen not to impose the condition if it had made the required findings.

If the Sexual Material Prohibition were limited to pornography, this court would likely be constrained to agree that the district court's procedural error did not affect Koch's substantial rights. *See Barela*, 797 F.3d at 1193-94 (holding that a district court's error in failing to make necessary findings to support a much narrower special condition—one limiting the defendant's access to "sexually explicit material"—did not affect the defendant's substantial rights because of "his convictions for distributing and possessing child pornography and his history of voracious pornography viewing"); *Martinez-Torres*, 795 F.3d at 1241 (noting that courts have upheld special conditions restricting access to "pornography" or "sexually explicit materials" when a defendant has been convicted of possessing child pornography); *Mike*, 632 F.3d at 700 n.9 ("In cases where the offense of conviction involved child pornography, a number of courts have held that a ban on adult pornography is not problematic."). The question on appeal, however, is not whether some abstract, generic special condition limiting Koch's access to adult pornography would withstand review under the plain error standard. The question is, instead, whether there is a reasonable probability the district court would not have imposed *the Sexual Material Prohibition* if it had engaged in the process mandated by this court's precedents. *See* Appellant's

-19-

Opening Br. at 7 (arguing as follows: "[The potential] intrusion on constitutionally protected activity is even greater than it was in *Martinez-Torres*. While the condition in *Martinez-Torres* prohibited the defendant only from possessing materials depicting or describing 'sexually explicit conduct' as defined by federal law, the condition here bars possession of any material that is 'sexually stimulating,' an even more overbroad proscription.").

As to that question, this court is confident the answer is "yes." Neither the Government nor the district court identify anything in the record to suggest that "sexually oriented" or "sexually stimulating" adult materials not amounting to pornography contributed to Koch's crimes or would increase his likelihood of reoffending. While the record documents at length the kind of child pornography found on Koch's electronic devices, there is no indication any other kinds of materials that might fall into the exceedingly broad Sexual Material Prohibition contributed to Koch's consumption of child pornography or his sexual contacts with young girls. Absent any such basis in the record, this court is constrained to conclude there is a reasonable probability the district court would not have imposed the Sexual Material Prohibition if it had engaged in the process mandated by *Martinez-Torres* and *Malone*.

**4. Fairness, Integrity, or Public Reputation of Judicial Proceedings**

Koch has shown that the district court's error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Malone*, 937 F.3d at 1327.

The conclusion that the record is devoid of any basis to support the imposition of the Sexual Material Prohibition, along with the concomitant conclusion that it is reasonably probable the district court would not have imposed the condition had the issue been considered at sentencing, likely satisfies Koch's burden. *Burns*, 775 F.3d at 1225; *cf. Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1909 (2018). In any event, restrictions on accessing constitutionally protected speech implicate serious and weighty matters. It undermines the fairness, integrity, and public reputation of judicial proceedings for a court to intrude on a defendant's First Amendment rights before first giving the matter the "focused attention" it deserves. *Martinez-Torres*, 795 F.3d at 1234.

## IV. CONCLUSION

For those reasons set out above, this court **VACATES** the Sexual Material Prohibition and **REMANDS** the case to the district court for further proceedings consistent with this opinion.